NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MONELLO LANDSCAPE INDUSTRIES, L.L.C., <br><br> Plaintiff, <br><br> v. <br><br> HATCH LANDSCAPE & DESIGN, INC. <br><br> Defendant. <br><br> HATCH LANDSCAPE & DESIGN, INC. <br><br> Third-Party Plaintiff, <br><br> v. <br><br> MEDWAY LUMBAR & HOME SUPPLY, INC. et al., <br><br> Third-Party Defendants. | Civil Action No. 16-5803 (JMV) <br><br><br> OPINION |

**Falk, U.S.M.J.**

This matter comes before the Court upon Defendant Hatch Landscape & Design, Inc.'s motion to transfer venue to the United States District Court for the District of Massachusetts pursuant to 28 U.S.C. § 1406(a). (CM/ECF No. 29.) The motion is

opposed. The motion is decided on the papers. Fed. R. Civ. P. 78(b). For the reasons set forth below, Defendant's motion to transfer is **denied**.

## FACTUAL AND PROCEDURAL BACKGROUND[1]

This is a breach of contract case. Plaintiff Monello Landscape Industries, LLC ("Monello"), a landscape design and installation company, is a New Jersey limited liability company with its principal place of business in Wayne, New Jersey. Defendant Hatch Landscape & Design, Inc. ("Hatch"), a landscaping contractor, is a Massachusetts corporation with an office in Millis, Massachusetts.

Monello had a contractual relationship to provide courtyard beautification and improvement services to one of the largest operators of assisted living facilities in the New England and Mid-Atlantic regions of the United States ("Client"). In January 2016, a representative of Monello contacted Hatch about the prospect of Hatch installing pavers, outdoor kitchens, fences and other design elements for Monello at two of its Client facilities located in Massachusetts– CareOne at Wilmington ("CareOne Wilmington") and CareOne at Lexington ("CareOne Lexington") (collectively "facilities"). On January 5, 2016, Monello representatives traveled to Massachusetts to visit Hatch's shop, inspect its equipment, and examine Hatch's previous work. In mid-

---

[1] The factual background is drawn from the Complaint and the parties' briefs and declarations.

January, Monello sent a Hatch employee design plans for the facilities and a copy of Monello's contract with its Client.

On March 7, 2016, Hatch provided Monello via email its proposed installation schedule for the two facilities. In mid-March, Hatch traveled to New Jersey, met with Monello and toured other New Jersey facilities which had courtyards improved by Monello. On March 23, 2016, following the tour, Monello and Hatch entered into a contract ("Subcontract") <u>in New Jersey</u> pursuant to which Hatch agreed to provide construction materials, landscaping fixtures and services for courtyard work at CareOne Wilmington and CareOne Lexington. The Subcontract contains a forum selection provision which provides in relevant part:

> 8. <u>Settlement of Disputes</u>
>
> d. Anything to the contrary in the Contract Documents notwithstanding, any controversy between Monello [ ] and [Hatch] not involving Client, the Contract Documents, or a Client Claim and which is not amicably resolved by the Parties will be submitted to either (1) a court of competent jurisdiction in the State of NJ; or (2) arbitration . . . to be conducted at the place where the Project is located. The prevailing party in any litigation/arbitration shall be entitled to recover reasonable attorney's fees, costs and expenses incurred in connection with the litigation.

(CM/ECF No. 29-2, Ex. G.)

Hatch began performance under the Subcontract on April 7, 2016. According to Monello, Hatch was in breach from the beginning due to its substandard work. As a result, Monello claims it was compelled to complete the courtyard work itself, and sent New Jersey-based labor to Massachusetts to make repairs.

On September 22, 2016, Monello filed a Complaint asserting claims for, *inter alia*, breach of contract and seeking a declaratory judgment. The Complaint states that the Court has diversity jurisdiction and asserts venue is proper in New Jersey pursuant to the Subcontract's forum selection provision. Hatch filed an Answer, Counterclaim and Third-Party Complaint naming Medway Lumbar & Home Supply, Inc. ("Medway"), the holding companies of CareOne at Wilmington and CareOne at Lexington ("CareOne Defendants"),[2] and Care Realty, L.L.C.[3] as Third-Party Defendants. The Third-Party Complaint asserts claims of unjust enrichment against the CareOne Defendants and claims for indemnification and negligence against Medway, the Massachusetts supplier.

On November 22, 2017, Hatch moved pursuant to 28 U.S.C. § 1406(a) to transfer this action to the United States District Court for the District of Massachusetts. Relying on the Supreme Court decision of <u>Atlantic Marine Const. Co. v. U.S. Dist. Court for the W.D. of Tex.</u>, 134 S. Ct. 568 (2013), Hatch maintains that proper venue is determined exclusively by federal venue laws. Hatch contends that because venue in New Jersey is not proper under the federal venue statute–28 U.S.C. § 1391–the forum selection clause is inapplicable and should not be considered by the Court.

---

[2] Third-Party Defendants are 750 Woburn Street Operating Company, L.L.C. a/k/a/ CareOne Wilmington and 178 Lowell Street Operating Company, L.L.C. a/k/a CareOne Lexington. (Third-Party Complaint ¶¶ 1, 8 and 9.)

[3] Care Realty, L.L.C. is a Delaware company based in Milford, Connecticut, and owned and operated the two CareOne facilities at issue in this case. (Third-Party Complaint ¶ 16.)

Monello opposes the motion to transfer arguing that venue is proper under 28 U.S.C. §§ 1391 and that therefore the motion must be denied.  Relying on Section 1391(b)(1) of the federal venue statute which provides that a civil action may be brought in a judicial district in which any defendant resides, Monello argues that Hatch is a resident of New Jersey for purposes of a venue analysis and thus venue is proper in this District.  See 28 U.S.C. § 1391(b)(1).  Monello also contends that venue may be laid in a judicial district in which a substantial part of the events giving rise to the claim occurred– which according to Monello is New Jersey.  See 28 U.S.C. § 1391(b)(2).

## DISCUSSION

**A.     Transfer of Venue Pursuant to § 1406**

A court may dismiss or in the interests of justice transfer a civil action to a different venue under 28 U.S.C. § 1406(a) where the *original venue is improper*.  See Jumara v. State Farm Ins. Co., 55 F.3d 873, 878 (3d Cir. 1995); see also 15 Charles A. Wright., Federal Practice and Procedure § 3827 (2d ed. 1986) ("A prerequisite to invoking § 1406(a) is that the venue must be improper.  The statute speaks of a case laying venue in the wrong division or district.  If the original forum was a proper venue, § 1406(a) cannot apply. . . .")

The United States Supreme Court has held that a finding of whether venue is "improper" is determined exclusively by reference to the federal venue statute–28 U.S.C.

§ 1391. See Atlantic Marine Constr. Co. v. U.S. District Court for the Western District of Texas, 134 S. Ct. 568, 577 (2013) Section 1391(b) provides:

> A civil action may be brought in–(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b). "Whether the parties entered into a contract containing a forum-selection clause has no bearing on whether a case falls into one of the categories of cases listed in § 1391(b)." Atlantic Marine, 134 S. Ct. at 577.

Simply stated, in order to decide whether this case can be transferred to Massachusetts pursuant to Section 1406, the Court must first determine whether venue in this District is proper under Section 1391(b). If the case falls into at least one of the Section 1391(b) categories, then venue is proper and Hatch's motion must be denied. If it does not, then venue is improper and the case may be transferred pursuant to 28 U.S.C. 1406(a).[4] In deciding whether venue is proper in New Jersey, the forum selection provision in the parties' Subcontract is irrelevant to the Court's analysis. Atlantic Marine, 134 S. Ct. at 577; see Howmedica Osteonics Corp. v. DJO Global, Inc., No. 16-2330, 2017 WL 1136671, *3 (D.N.J. Mar. 27, 2017) (wherein Hon. John M. Vazquez, U.S.D.J.

---

[4]Section 1406(a) provides that the district court "shall dismiss, or if it be in the interest of justice, transfer such a case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). Here, Hatch moves only to transfer.

focused exclusively on the Section 1391(b) categories to determine whether New Jersey is a proper venue).

B.      **Venue is proper in New Jersey**

Monello alleges, *inter alia*, that venue is proper in New Jersey pursuant to 28 U.S.C. § 1391(b)(1).[5] Plaintiff contends that Hatch's conduct related to the Subcontract establishes minimum contacts with the state sufficient for this Court to exercise personal jurisdiction over it, thereby rendering it a resident for a venue analysis.  See  28 U.S.C. § 1391(c)(2).   For the reasons discussed below, the Court finds that Hatch is a resident of New Jersey for venue purposes, that venue is proper here, and that Hatch's motion therefore must be denied.   Under Section 1391(b)(1), venue is proper in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located [.]" Hatch is the only defendant in this action;[6] venue is proper

---

[5]Monello also argues that venue is proper pursuant to U.S.C. § 1391(b)(2).  Because the Court finds that jurisdiction is proper under section 1391(b)(1), it need not address Plaintiff's arguments on this point.

[6]The district in which proper venue lies "is determined at the time the complaint is filed." Zaretsky v. Gemological Institute of America, Inc., No. 13-3807, 2014 WL 683983 (D.N.J. Feb. 20, 2014) (quotations omitted); see also Sunbury Wire Rope Mfg. Co. v. U.S. Steel Corp., 230 F.2d 511, 512 (3d Cir. 1956).  Plaintiff commenced this action naming Hatch as the sole defendant in this case and is the only defendant to be considered in the 1391(b)(1) analysis.   In addition, while there does not appear to be a case directly on point in this District, generally venue of third-party proceedings will follow that of original proceedings, and third-party defendants may be brought in without regard to venue.  See 6 Wright, Miller & Kane, Fed. Prac. & Proc. Civ. § 1445 (3d ed.) ("the statutory venue limitations have no application to Rule 14 claims even if they would require the third-party action to be heard in another district had it been brought as an independent action"); see also McGrath v. Lund's Fisheries, Inc. 170 F.Supp. 173 (D. Del. 1959).

if Hatch resides in New Jersey. Notwithstanding that Hatch is incorporated and has its principal place of business in Massachusetts, Plaintiff argues that Hatch is a resident of New Jersey for venue analysis pursuant to 28 U.S.C. § 1391(c)(2). This section provides that a corporation is deemed to reside "in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question. . . ." 28 U.S.C. § 1391(c)(2). Therefore, whether Hatch is a resident of New Jersey for venue purposes turns on whether this Court has personal jurisdiction over it.

Under Rule 4(e) of the Federal Rules of Civil Procedure, district courts have personal jurisdiction over nonresident defendants to the extent allowed under the law of the forum state in which the district court sits. See Sunbelt Corp. v. Noble, Denton & Assoc., Inc., 5 F.3d 28, 31 (3d Cir. 1993). A district court exercising diversity jurisdiction over a case must look to the forum state's long-arm statue in analyzing whether there is personal jurisdiction over a non-resident defendant. Id. New Jersey's long-arm statute permits the exercise of personal jurisdiction "to the fullest limits of due process." IMO Indus., Inc. v. Kiekert AG, 155 F.2d 254, 259 (3d Cir. 1998). The Fourteenth Amendment's Due Process Clause requires that "individuals have fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985). A court may assert personal jurisdiction so long as the defendant has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and

8

substantial justice." Control Screening LLC v. Technological Application & Prod. Co., HCMC-Vietnam, 687 F.3d 163, 167 (3d Cir. 2012) (quoting International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). Consistent with these principles, personal jurisdiction may be exercised under either a general or specific jurisdiction theory. Remick v. Manfredy, 238 F.3d 248, 255 (3d Cir. 2001).

A court may exercise general jurisdiction over a foreign corporation even when the cause of action has no relation to those contacts if the defendant's contacts with the forum are so "continuous and systematic" as to render them essentially "at home" in the forum state. Daimler AG v. Bauman, 571 U.S. 117, 127, 134 S.Ct. 746, 754, 187 L.Ed.2d 624 (2014); Goodyear Dunlop Tires Operations, S.A. v. Brown, – U.S.–, 131 S.Ct. 2846, 2851, 180 L. Ed.2d 796 (2011); Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prod. Co., 75 F.3d 147, 151 n.3 (3d Cir. 1996). "[G]eneral jurisdiction requires a 'very high threshold of business activity.'" Ameripay, LLC v. Ameripay Payroll, Ltd., 334 F. Supp. 2d 629, 633 (D.N.J. 2004) (quotations omitted).

Specific jurisdiction is present when a claim is related to or arises out of the defendant's contacts with the forum, such that the defendant "'should reasonably anticipate being haled into court'" in that forum. Vetrotex Certainteed Corp., 75 F.3d at 151 (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)). The plaintiff must demonstrate that (1) the defendant purposefully directed his activities at the forum; (2) the litigation arises out of or relates to

9

at least one of those contacts, and (3) the exercise of jurisdiction otherwise comports with traditional notions of fair play and substantial justice. O'Connor v. Sandy Lane Hotel Co., Ltd., 496 F.3d 312, 317 (3d Cir. 2007). At a minimum, the defendant must have "purposefully avail[ed] itself of the privilege of conducting activities within the forum." O'Connor, 496 F.3d at 317. Parties who "reach out beyond [their] state and create continuing relationships and obligations with citizens of another state" are subject to the regulations of that state. Burger King Corp v. Rudzewicz, 471 U.S. 462, 473, 105 S.Ct. 2174 (1985). In the commercial context, the intention to establish a common venture is a more important consideration than which party initiated the business relationship. See General Elec. v. Deutz AG, 270 F.3d 144, 151 (3d Cir. 2001).

To determine whether a court has personal jurisdiction over a nonresident defendant, a court "must consider the totality of the circumstances, including the location and character of the contract negotiations, the terms of the contract, and the parties' actual course of dealing." Remick v. Manfredy, 238 F.3d 248, 256 (3d Cir. 2001). A court should also look at "whether the defendant's contacts with the forum were instrumental in either the formation of the contract or its breach." Deutz AG, 270 at 150. A single visit by a defendant to the forum may satisfy the necessary minimum contacts required if the contract that forms the basis of the suit was negotiated during that visit. See Williams v. Ying Zhou, No. 14-5544, 2018 WL 648354 (D.N.J. Jan. 30, 2018) (defendant's visit to forum for meeting coupled with emails sent to forum by defendant were sufficient to

satisfy the "purposeful availment" requirement); ( Leone v. Cataldo, 574 F.Supp.2d 471, 478-79 (E.D. Pa. 2008) (finding defendant's single visit and phone calls to forum state were instrumental in formation of contract and sufficient to establish minimum contacts); George Young Co. v. Bury Brothers, Inc., 2004 WL 1173129 (E.D. Penn. 2004) (finding that because some contract negotiation took place during defendant's visit to the forum state, the single visit alone sufficed to establish minimum contacts to exercise personal jurisdiction).

Communications sent by a defendant into the forum either by mail or telephone can also count toward the minimum contacts required to establish personal jurisdiction. See Grand Entertainment Group v. Star Media Sales, Inc., 988 F.2d 476, 482 (3d Cir. 1993) (finding personal jurisdiction over a breach of contract case where defendants had not physically entered the forum but had sent multiple telexes and initiated twenty phone calls with plaintiffs in the forum regarding contract negotiations)

Plaintiff argues that this Court has specific jurisdiction over Hatch.[7] Having considered the circumstances surrounding the negotiations and execution of the Subcontract, the Court finds that, for the limited purposes of this motion, it has personal jurisdiction over Hatch so as to deem it a resident of New Jersey. Hatch engaged in

---

[7]Although not completely clear, Plaintiff does not appear to contend that his Court has general jurisdiction over Hatch as it does not argue that Hatch's contacts with New Jersey were "continuous and systematic" so as to render it "at home" in New Jersey. Daimler AG, 134 S.Ct. at 761. Because the Court finds that it can exercise specific jurisdiction over Hatch, it does not consider whether general jurisdiction exists.

11

various purposeful activities that occurred in or were directed at New Jersey. Hatch communicated with Monello located in New Jersey over the course of three months leading up to the execution of the Subcontract in March 2016. (Compl. ¶ 13.) Among the communications were Hatch's meeting with a Monello representative in Massachusetts, Hatch's acceptance of Monello's design plans, and Hatch's email to Monello of two proposed installation schedules for the Client facilities. (Id. ¶¶ 15-16.) Upon receipt of a draft Subcontract from Monello, Hatch made certain changes and returned it to Monello in New Jersey. (Certification of Frederick E. Gerson, Esq. dated December 11, 2017 ("Gerson Certif."), Ex. B ¶ 6.) Significantly, in March 2016, a representative of Hatch traveled to New Jersey, met with Monello, and toured Monello's Client facilities which had improved courtyards so that Hatch could become familiar with the type and quality of work that it would be expected to perform under the Subcontract. During its visit with Monello in New Jersey, Monello and Hatch signed the Subcontract in New Jersey. (Compl. ¶ 24; Gerson Certif., Ex. B ¶ 7.)

The communications and visits to New Jersey by Hatch were instrumental to the formation, ultimate execution, and anticipated performance of the Subcontract. See Strikeforce Technologies, Inc. v. White Sky, Inc., 2013 WL 3508835, *2 (D.N.J. July 11, 2013) (quoting Control Screening LLC v. Tech. Application & Prod. Co., 687 F.3d 163, 167 (3d Cir. 2012) (specific jurisdiction exists where defendant's contacts with the forum are "instrumental in either the formation or the breach of the contract"). The Court finds

that based on the totality these facts–in particular Hatch's review, amendment, and return of the draft Subcontract to Monello in New Jersey, Hatch's meeting with Monello in New Jersey, and Hatch's entering into the contract in New Jersey– Hatch "purposefully avail[ed] itself of the privilege of conducting activities within [New Jersey], thus invoking the benefits and protections of its laws." Burger King Corp., 471 U.S. at 475; see also Carteret Sav. Bank, FA v. Shushan, 954 F.2d 141, 147-48 (3d Cir.), cert. denied, 506 U.S. 817, 113 S.Ct. 61 (1992) (holding that telephone calls and correspondence directed by non-forum resident to New Jersey in connection with negotiating a loan agreement together with one visit by non-forum resident to New Jersey provided sufficient minimum contacts to satisfy due process).

While the forum selection provision is definitely not weighed in the Court's venue analysis, as a practical matter it could shed light on Hatch's intended connection with New Jersey. The provision, considered with the other contacts discussed above, could be argued to show Hatch's "deliberate affiliation with the forum State and the reasonable foreseeability of possible litigation in [New Jersey]." Budget Blinds, Inc. v. White, 536 F.3d 244, 261 (3d Cir. 2008). One could argue that provision demonstrated it is conceivable that Hatch could have anticipated being haled into Court in New Jersey. See Vetrotex Certainteed Corp., 75 F.3d at 151. However, we repeat that the forum selection clause was not considered as a basis for venue.

In addition, it is noteworthy that Hatch did not expressly raise lack of personal jurisdiction as a defense in its answer, nor did it file a motion to dismiss based on no personal jurisdiction–including in this motion based on improper venue–during the 18 months since this case was filed. This is arguably a waiver of any claim of lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12. Indeed, personal jurisdiction, as well as venue, may be waived. See F.R.C.P. 12(h)(1) (defense of personal jurisdiction is waived if not asserted in responsive pleading or raised in party's initial motion pursuant to Rule 12); Natarajan v. CLS Bank Intern., No. 12-6479, 2014 WL 1745024, *2 n.4 (D.N.J. Apr. 2014) (citations omitted) (defendants waived personal jurisdiction by failing to raise it until they filed their reply brief in support of their motion to change venue). To be clear, the Court does not make any finding as to whether such waiver of personal jurisdiction occurred. The finding of specific jurisdiction as a basis for a venue finding was made solely on the contacts discussed herein. However, as a practical matter, if Hatch felt strongly about a lack of jurisdiction, it seems likely it would have raised it earlier and in accordance with Rule 12. Hatch did not, but rather answered and filed a third-party complaint against another entity.

The Court finds that the claims at issue arise out of Hatch's contacts with New Jersey, and in particular, through the business relationship established with Monello under the Subcontract. The Court further finds that Hatch cannot claim surprise or unfairness at having to defend this litigation here. For the reasons expressed above, the Court

concludes that venue is proper in this district pursuant to § 1391(b)(1) based on the Court's personal jurisdiction over Hatch.  See 28 U.S.C. 1391(c).

## **CONCLUSION**

For the reasons stated above, Hatch's motion to transfer venue to the United States District Court for the District of Massachusetts pursuant to 28 U.S.C. § 1406(a) is **denied**. (Docket Entry No. 29.)  A separate Order accompanies this Opinion.


                                  s/Mark Falk
                                  **MARK FALK**
                                  **United States Magistrate Judge**

**DATED: May 9, 2018**